Statement.

---

# Richmond.

TABB AND OTHERS v. COMMONWEALTH.

JANUARY 25, 1900.

1. TAXES—*Liens—Life Tenant and Remainderman—Levies by Richmond City.*—Taxes and levies, whether assessed by the State or the city of Richmond, which accrue during the estate of a tenant for life, are liens on the estate of the life tenant only, and not on the estate of the remainderman, and cannot be enforced against the latter.

Appeal from a decree of the Circuit Court of Henrico county pronounced March 10, 1899, in a suit in chancery wherein the appellant, Charles S. Tabb, was the complainant, and the other appellants were the defendants.

*Reversed.*

This was a suit in chancery instituted by Charles S. Tabb, a son of P. M. Tabb and wife, against the other children of said P. M. Tabb and wife, and the children of a deceased child, for the purpose of having a partition of certain real estate situate in the city of Richmond and county of Henrico which had been settled upon the said P. M. Tabb and wife for their joint lives, with remainder to the survivor for life, with remainder in fee to said children. The bill charged that certain taxes assessed on said land during said life estates had been asserted as liens on the remainder, and prayed that the validity of said liens might be ascertained, the remainder relieved of liability for said taxes, and for a partition of the land. The State, county of Henrico and city of Richmond, each claiming liens for taxes, were, on their respective petitions, admitted parties to the suit.

The Circuit Court held that the city of Richmond had a lien for all of its unpaid taxes, and that the State and county of Henrico had liens for all taxes "which became due and payable within five years prior to the 29th day of June, 1898 (the date of the decree of reference in this cause), or subsequent to that day." From that decree this appeal was allowed.

*Thomas N. Carter* and *Christian & Christian*, for the appellants.

*Attorney-General A. J. Montague, H. R. Pollard* and *C. R. Sands*, for the appellees.

RIELY, J., delivered the opinion of the court.

The question for decision in this case is whether taxes and levies assessed on land are a lien on the fee, or only on the estate in the land of the person against whom or in whose name they are assessed; or, to be more specific, are taxes and levies, which accrued during the estate of a tenant for life, liens on the estate of the remainderman and enforceable against it. It is not a question of the power of the legislature to make taxes and levies liens on the fee or entire interest in the land, but whether it has done so.

For the proper determination of the question, it is necessary to consider not merely the particular statutes giving the lien, but to pass in review certain other statutes *in pari materia* enacted for the assessment of the value of real estate for the purposes of taxation, and the assessment of taxes and levies thereon, and the provisions made for the collection of the taxes and levies and the enforcement of the lien thereof, which bear materially upon the matter in controversy and serve to elucidate the inquiry. It is only in this way that we may correctly ascertain the intent of the legislature, and the extent of the lien that is given upon the land.

Assessors are appointed every five years to ascertain the value of all real estate for the purposes of taxation. They are required to ascertain and assess the cash value of each tract and lot of land; and, upon the basis of such assessment, it is prescribed that the annual tax upon land shall be extended. And it is provided that there shall be a lien on all real estate for the taxes and levies assessed thereon. Code of 1887, sections 437, 441, 447, 456, and 636.

If these were the only statutes affecting the question for decision, it might be very plausibly contended that the lien was in every case upon the fee or whole interest in the land, and never upon any less estate. But when we turn to the statutes prescribing how taxes and levies on real estate shall be assessed, and how they shall be collected, and the lien thereof enforced by a sale of the land if they are not paid, such contention cannot be maintained.

By sections 465 and 466 of the Code, each commissioner of the revenue in making up his land-book and entering and extending the tax and levy imposed upon real estate, is required to enter each tract and lot of land separately, and to set forth in separate columns, among other things, the name of the person who by himself or his tenant has the freehold in possession, his place of residence, and the nature of his estate, whether in fee or for life.

Any goods or chattels in the county or corporation belonging to the person assessed with taxes or levies may be distrained therefor; and anyone indebted to or having in his hands estate of the person assessed with taxes or levies may be required to pay the same to the extent of such indebtedness or estate, thus making the taxes and levies a personal liability of him who has the freehold in possession as well as a lien on the land. Code, sections 622, 624, and 627.

When taxes and levies on real estate are not paid, and the treasurer is unable, after due diligence, to find property within

his county or corporation liable to distress for the taxes and levies, he is required to make out and return three lists of uncollected taxes and levies, the second whereof, which is the only one pertinent to the matter under consideration, shall contain the real estate that is delinquent for the non-payment of the taxes and levies thereon. The form of this list is prescribed, and it is required, as in the land-book, that it specify the land returned delinquent, and give, among other things, the name of the person assessed with the taxes and levies, his residence, and the nature of his estate in the land. Code, sections 605 and 606.

If the taxes, levies, interest, costs, and charges, and a due proportion of the expense incurred, be not paid, the treasurer is required to sell at public auction the real estate mentioned in the aforesaid list, after due publication of the time and place of sale, to satisfy the said charges; and if no person bids the amount thereof, the treasurer shall purchase the real estate in the name of the Auditor of Public Accounts for the benefit of the State, county, city or town respectively, unless the same has been previously purchased in the name of the Auditor, in which case it shall be sold for such price as it will bring. Code, sections 637, 638, 639, and 662.

If at said sale any person shall bid for any real estate delinquent for the non-payment of taxes and levies the amount chargeable thereon, the same shall be cried out to him; and if it be not redeemed within the time prescribed, by the owner, his heirs, or assigns, or by some one having the right to charge the same with a debt, the purchaser is entitled to a conveyance of the land. When the purchaser has obtained a deed therefor, and it has been duly admitted to record in the county or corporation in which the real estate lies, the statute prescribes that "the right or title to such estate shall stand vested in the grantee in such deed *as it was vested in the party assessed with the taxes or levies on account whereof the sale was made,* at the commencement of the year for which said taxes or levies were assessed, or

in any person claiming under such party." Code, sections 650, 655, and 661.

And in section 661 it is expressly provided that nothing in that section "shall be so construed as to affect or divest the title of a tenant in reversion or remainder to any real estate which has been returned delinquent and sold on account of the default of the tenant for life in paying the taxes or levies assessed thereon."

When any real estate delinquent for the non-payment of taxes or levies assessed thereon has been purchased in the name of the Auditor of Public Accounts and has not been redeemed, provision is made for the sale and conveyance thereof to any person desiring to purchase the same "for the amount for which the sale to the Commonwealth was made, together with such additional sums as would have accrued from taxes and levies and interest, if such real estate had not been so purchased by the Commonwealth, with interest on the amount for which said sale was made at the rate of six *per cent. per annum* from the day of sale, and on the additional sums from the 15th day of December in the year in which the same would have accrued." Code, section 666.

The provisions of section 661 are expressly made applicable to deeds made under authority of section 666, from which it follows that there is vested in the grantee only the right or title to the land of the person assessed with the taxes or levies on account whereof the sale was made to the Commonwealth; and, if the sale was made on account of the default of the tenant for life in paying the taxes or levies accruing during his estate, the title of the tenant in reversion or remainder is in nowise affected or divested.

It thus appears from the foregoing review of the statutes respecting the assessment of taxes and levies on real estate, their collection, and the means provided for the enforcement of the lien therefor created upon the land, that they are required to be

assessed in the name of and against the person who by himself or his tenant has the freehold in possession; that upon him, and upon no one else, are they made a personal liability, and that only his goods and chattels and estate can be distrained therefor or otherwise subjected to their payment; and that when the treasurer has been unable to find any property liable to be distrained or otherwise subjected to the payment of the taxes or levies, and the land has been returned delinquent, sold for their non-payment, and not redeemed, the purchaser, whether at the sale of the·land made by the treasurer for the unpaid taxes, levies, and other charges, or from the Commonwealth, if she bought it at such sale, acquires by the deed of conveyance of the land made to him in pursuance of his purchase no other right or title to the land than the right or title thereto of the person assessed with the taxes or levies on account whereof the sale was made. And as such sale is the method provided by the legislature for the enforcement of the lien created upon the land for the unpaid taxes or levies, and must be presumed to have been intended to be commensurate with the extent of the lien, and effectual for its enforcement, there being nothing to indicate a different intent, it is manifest therefrom, when considered in connection with the provisions for the collection of taxes and levies by the treasurer which have been reviewed, that the lien for the taxes and levies is only upon the interest in the land of the person assessed therewith. And so, as the remedy for the enforcement of the lien for the taxes and levies asserted in the case at bar only extended to the estate of the tenant for life, the lien therefor was only on the life estate, and to that extent only was it intended to be given by the law-making power.

It is to be further observed that if the Commonwealth has become the purchaser of the land at the sale made thereof by the treasurer, and it is thereafter resold to any person under the provisions of section 666, the sale is only authorized to be made, as heretofore shown, "for the amount for which the sale

to the Commonwealth was made, together with such additional sums as would have accrued from taxes and levies and interest, if such real estate had not been purchased by the Commonwealth, with interest on the amount for which said sale was made at the rate of six *per cent. per annum* from the day of sale, and on the additional sums from the 15th day of December in the year in which the same would have accrued." Upon such sale, the Commonwealth would therefore receive all unpaid taxes, levies, and interest, and be reimbursed all expenses incurred in respect thereto. If the sale, at which the Commonwealth became the purchaser of the land, was made on account of the default of the tenant for life in paying taxes or levies accruing during his estate, the purchaser from the Commonwealth would in that case acquire only the estate of the tenant for life, which, if the contention so earnestly made in argument were true, that the lien for taxes and levies was upon the fee or entire interest in the land, would leave the reversion or remainder in the Commonwealth under its purchase at the sale by the treasurer, without any provision whatever by the Legislature for the re-vesting of the reversion or remainder in the reversioner or remainderman, although the Commonwealth in the resale of the land under the provisions of section 666 has been fully reimbursed all unpaid taxes and levies, and all other charges and expenses. This is conclusive to my mind, if aught else were necessary, that the lien for taxes and levies is only upon the estate in the land of the person in whose name they are assessed. Otherwise, the Commonwealth would be made a speculator in the lands of its citizens, which, it may be safely affirmed, was never intended by the Legislature.

It was argued by the learned counsel for the city of Richmond that, even if the lien of the Commonwealth be only co-extensive with the estate in the land of the person assessed with her taxes, nevertheless the lien of the city for its taxes is in all cases on the fee. He founded this contention on the language of section

83 of the charter of the city, where it is provided that when land is struck off to the city at the sale thereof for its taxes, and is not redeemed by the owner or some one having a right to charge it with a debt, "the said corporation, or their assignees, shall acquire an absolute title to the same in fee."

In this contention we are unable to concur. We do not think that the language quoted above is to receive the unlimited literal construction contended for.

The charter (section 75) prescribes that "there shall be a lien on real estate for the city taxes assessed thereon," which is substantially, almost literally, the language in which the lien is given to the Commonwealth for taxes. The ordinances of the city, prescribing how its taxes on real estate shall be assessed, follow in all material respects the statutes for the assessment of taxes for the Commonwealth. Richmond City Code, ordinances, chapter 12. By section 4 thereof, the commissioner of the revenue is required to enter in the land-book, among other things, as is required by the statutes in assessing taxes for the Commonwealth, the name of the owner of each parcel of real estate, his residence, and the nature of his estate, whether in fee or for life, and it is against such owner, the tenant for life or the fee-simple owner, as the case may be, that the taxes are assessed. It is such owner, whom the ordinances make personally liable for the taxes, and whose goods and chattels or estate may be distrained therefor or subjected to their payment. City Code, ordinances, chapter 14. If it were intended that the lien should be on the fee-simple estate, upon the estate of the remainderman as well as upon the estate of the tenant for life, why were not the goods and chattels and other estate of the remainderman made liable for the payment of the taxes as well as the personal estate of the tenant for life? This by itself renders it reasonably clear that the lien given upon real estate for taxes assessed thereon was intended to be a lien only on the estate of the person assessed therewith.

But to return to the charter: If the taxes are not paid, or cannot be made out of the estate of the person assessed therewith, provision is made for the sale of the land for the taxes after publication of notice of the time and place of sale, in which notice each parcel of land shall be described, the name of the person given to whom each parcel is assessed, and the amount of the tax. If at such sale no bid shall be made for the land, or such bid shall not be equal to the tax, with interest and charges, the land shall be struck off to the city. Charter, sections 76-78.

When any real estate has been so sold, and is not redeemed within the time prescribed by the owner, his heirs or assigns, or by some one having a right to charge such real estate with a debt, it is expressly provided, as in the case of land sold for taxes due to the Commonwealth, that when such real estate has been conveyed and the deed recorded, "such estate shall be vested in the grantee in such deed as was vested in the party assessed with taxes on account whereof the sale was made." Charter, section 82.

It was conceded by the learned counsel that when any person other than the city became the purchaser of land at the sale for taxes, he acquired only such estate in the land as was vested in the person assessed with the taxes, but he claimed that when the land was struck off to the city and not redeemed, the city, by reason of the language hereinbefore quoted from section 83, acquired an absolute title to the fee, although the person assessed with the taxes on account whereof the land was sold owned only a life estate in it. There is no sound reason for such distinction. The object of the lien is to secure the payment of the taxes, and the purpose of the sale is to enforce the lien, and thereby realize the amount of the taxes, interest, and charges. If this amount is bid by anyone at the sale, there is no authority to strike off the land to the city. Considering the object of the lien and the purpose of the sale, it could not have been intended that the city occupy any higher ground than any other pur-

chaser, or acquire any greater estate by reason of her purchase; and yet, if the contention made in its behalf be true, in the case of a sale of land for taxes assessed against a tenant for life, the city would acquire the fee, while any other purchaser would get only the life estate. A construction that would result in so great inconsistency and create such a want of harmony with all other provisions and statutes *in pari materia* is not to be favorably entertained unless plainly required.

Further provision is made for the redemption of the land by the owner, that is, by the person assessed with the taxes (*Dooley v. Christian*, 96 Va. 534), who, in this case, was the life tenant, or by anyone having the right to charge the land with a debt; but there is no provision for its redemption by the reversioner or remainderman, when the person assessed with the taxes on account whereof the land was sold had only a life estate. Charter, section 79. It is inconceivable that the Legislature could have intended to deprive the reversioner or remainderman of his interest in the land, and vest it absolutely in the city under a sale for taxes assessed against the tenant for life, without any opportunity to redeem it, although ample provision was made for the tenant for life, whose default in paying the taxes assessed against him caused the sale, and also for anyone having the right to charge the land with a debt to redeem it. Injustice so gross could not have been intended. Inconsistency and injustice are not generally to be taken as potential guides in the construction of statutes, but cases do occur when these considerations are entitled to great weight, and this is one of them. Sutherland on Stat. Con., secs. 246, 322, 324; Endlich on Int. of Stat., sec. 266.

A provision of a section of a statute ought not to receive a mere literal interpretation, when it would contravene the intention of the Legislature apparent from the other sections and provisions thereof, but the words are to be expanded or qualified to effectuate the intention   Sutherland on Stat. Con., secs. 218,

Opinion.

246, 324; Endlich on Int. of Stat., sec. 115; *Reiche* v. *Smythe,* 13 Wall. 162; and *O. & A. R. Co.* v. *The City Council of Alexandria,* 17 Gratt. 176.

The clause in the charter which was relied upon by the counsel of the city for his contention was only intended, we think, to accentuate what would otherwise have been true, that the city would take absolutely the right or title of the person assessed with the taxes. If he owned the fee, the city takes the fee in absolute estate; if he owned a life estate, it takes that absolutely, but no greater interest. But however this may be, the question presented for decision is not what estate is acquired by the city on becoming a purchaser of land sold for the payment of delinquent taxes assessed against a tenant for life, but simply what is the extent of the lien it has for its taxes in such a case. For taxes which accrued during the estate of the tenant for life and assessed against him, the lien is, we think, only upon the life estate, and does not extend to the reversion or remainder. Our conclusion, therefore, is that the lien for taxes and levies assessed on real estate, whether they are assessed for the Commonwealth or counties, or for the city of Richmond, is only upon the estate of the person assessed with the taxes and levies.

The decree appealed from must therefore be reversed, and the cause remanded for further proceedings to be had therein in accordance with the views expressed in this opinion.

*Reversed.*

CARDWELL, J., dissents.