Mrs. W. P. Wilson, Appellee, v. Mid-West State Bank et al., Appellees; Ray Dale, Intervener, Appellant.

BILLS AND NOTES:  Bona-Fide Purchaser—Burden in re Postdated
1  ''Certified'' Check.  The fact that a check has been ''certified'' by the drawee bank does not exempt the holder from the duty to show that he is a holder in due course.  Especially is this true when the check shows on its face that it was postdated by some three weeks.

INJUNCTION:  When Writ Lies—Relief in re Illegal Transaction.
2  One who has been defrauded into the purchase of water on the representation that it was genuine whisky may enjoin the payment of the check issued therefor, notwithstanding the suggestion of mutual illegality in the transaction.

EQUITY:  Remedy at Law—Belated Objection.  The objection that an
3  action in equity will not lie because of the existence of an adequate remedy at law must be made in the trial court.

*Appeal from Woodbury District Court.*—W. G. Sears, Judge.

MARCH 7, 1922.

Action in equity, to enjoin the defendant bank from paying a check drawn by the plaintiff and made payable to bearer. The intervener claims to be an innocent holder for value of the check in question, and asks for judgment thereon against the bank.  There was a decree for plaintiff, and the intervener alone appeals.—*Affirmed.*

*Snell & Randall* and *Robert B. Pike*, for appellant.

*Free & Pickus, Alfred Pizey*, and *F. L. Ferris*, for appellees.

Weaver, J.—The history of the check in question is as follows:  Plaintiff, a married lady, lives in the suburbs of the city of Sioux City, and on December 27, 1919, was so fortunate as to have a comfortable balance to her credit in the Mid-West Bank in that city.  On the day named, one Noltze, also known in the record as John Doe, appeared at plaintiff's home, and

professed to sell her 15 gallons of whisky for $1,000, for which sum she gave him the check. The check, though given December 27, 1919, was dated January 15, 1920. On receiving it, Noltze took it to the bank at once, and at his request, an officer of the bank certified it. On or before January 1st following, and 15 days before the check was payable, the plaintiff, who modestly admits that she is "a judge of whisky," appears to have sampled the stuff, and to her disgust discovered that it "had no kick in it;" that it was not whisky at all, but was "water." As was natural in one having the Missouri River flowing at her feet and offering her its limpid and sparkling waters without money and without price, she concluded that John Doe (alias Noltze) had swindled her, and at once called up the bank by telephone, and notified it not to honor the check. On January 19, 1920, the check was presented for payment by or in behalf of one Ray Dale, who is the intervener herein. The bank refused payment, on the plea that the check had been materially altered after its certification. Negotiations for a settlement of some kind having failed, plaintiff brought this action in equity, setting up the alleged facts as above stated, alleging that Dale took the check with knowledge that it was supported by no consideration, and asking an injunction, to restrain the bank from paying the check, and for other appropriate relief. Dale filed a petition of intervention, alleging his ownership of the check, his acquirement thereof in good faith and for valuable consideration, and asking judgment against the bank upon its certification. The bank, on its part, answered, admitting its certification of the check, and the fact that it has in hand the money represented by it, and alleges that it has no interest in the controversy, except to protect such certification. It also tenders and offers to pay said money into court, to be disposed of or paid to such person as the court shall find entitled to receive it.

There was a trial to the court, which found for the plaintiff, that the check was given without consideration, that the intervener was not a holder or purchaser in good faith, and that the certification by the bank was void and of no effect, and entered judgment against the intervener for costs.

To sustain his claim of being an innocent purchaser, Dale

makes the following showing: That he is a farmer, owning 320 acres of land in Iowa and a like area in Dakota, and that he finds relief from his agricultural labors and bur

1. BILLS AND
NOTES: bona-
fide purchaser:
burden *in re*
postdated "cer-
tified" check.

dens in the noble game of craps. Among his friends was one McPherson, who, he says, "is not financially responsible." McPherson was owing intervener $100. On December 29, 1919, this irresponsible friend appears to have been in possession of the certified check for $1,000, and offered to negotiate it to intervener, in payment of his indebtedness of $100, and $300 in cash. Intervener did not have the money on hand, but says he went to one Morgan, who "runs a pool hall," and "got the whole business from him. He owed me that amount of money in a crap game." Armed with the money thus acquired, intervener "went over to McPherson in the city hall," and together they repaired to the seclusion of the water-closet, where this transaction in high finance was consummated. He naively, but rather unnecessarily, explains: "We went into the toilet room to get out of sight."

Further reference to the testimony would seem to be superfluous. There is no dispute that the check had its origin in the transaction testified to by plaintiff; and under the statute, the burden was on the intervener to establish his claim to be an innocent holder of the paper, by a preponderance of the evidence. It would be an affront to the intelligence of a court or jury to argue that intervener has met this burden of proof. On the contrary, intervener has conclusively convicted himself of bad faith. We will not prolong this opinion to point out or discuss the multiplied indicia of fraud and bad faith which are glaringly apparent at every turn in the intervener's own story of his connection with the transaction; but to permit him to recover upon the check so procured would be a gross abuse of judicial authority. The fact that the check was certified does not obviate the rule that the holder who seeks to recover thereon against the bank must be a holder in good faith. If, for example, the bank by mistake certifies the check of one who has no money on deposit, it may well be held estopped to deny the effect of its certification, as against one who has received in good faith; but a holder who takes it with notice of the mistake

holds it subject to the defense. Moreover, the check in this instance was postdated by a matter of about three weeks, and was, therefore, irregular and unauthorized, and not in due course of business. It carries the notice of its defect upon its face, and he who takes it holds it subject to that objection. *Farmers & M. Bank v. Butchers & Drovers' Bank,* 16 N. Y. 125; *Clarke Nat. Bank v. Bank of Albion,* 52 Barb. (N. Y.) 592, 597; *Pope v. Bank of Albion,* 57 N. Y. 126; 7 Corpus Juris 711, Section 441½; *First Nat. Bank v. Union Trust Co.,* 158 Mich. 94.

The many cases cited by appellant's counsel as to the immunity of innocent holders of commercial paper against defenses by makers are doubtless good law, but the intervener fails at the threshold of his case to show himself entitled to the benefit of the rules so relied upon.

It is next urged that, according to plaintiff's story, the check was given in an illegal transaction, and that the court ought not to aid her in avoiding payment. It is true that plaintiff was trying to purchase whisky, but, according to her testimony, she did not. She says that the stuff delivered to her was not whisky, but water, in which there was no "kick;" and there is no evidence to contradict her. We know of no statute prohibiting the sale of nonintoxicating water. Nor are we prepared to say that, even if the beverage sold were in fact whisky, we would refuse to affirm the holding of the trial court, under the undisputed circumstances of this case.

2. INJUNCTION: when writ lies: relief *in re* illegal transaction.

Finally, question is raised as to the jurisdiction of a court of equity to entertain this case; because, as counsel say, if plaintiff has been wronged, she has an ample remedy at law. The objection is unavailing. If the point so made be well taken, the objection is not jurisdictional, the proper remedy being to move for a transfer of the issues to the law docket. Code Section 3432. This was not done, and there was no error in trying the case on the theory adopted by the plaintiff. Every person having or asserting any right in the subject-matter of the litigation was a party to the action; the check itself was in court; the conflicting claims of the parties were presented in the pleadings

3. EQUITY: remedy at law: belated objection.

and tried out to final judgment; and objections to the forum raised for the first time in this court cannot be considered.

Substantial justice appears to have been done, and the decree of the trial court is—*Affirmed.*

STEVENS, C. J., PRESTON and DE GRAFF, JJ., concur.