H. S. HOOVER, Appellant, v. IOWA STATE HIGHWAY COMMISSION et al., Appellees.

DECEMBER 14, 1928.

*Thomas J. Bray,* for appellant. :

*John Fletcher,* Attorney-general, and *Gerald O. Blake,* Assistant Attorney-general, for appellees.

KINDIG, J.—This proceeding involves the application of Section 4566 of the 1927 Code, which reads as follows:

"No road shall be established through any cemetery. No road shall, without the owner's consent, be established through any orchard, or ornamental grounds contiguous to any dwelling house, or so as to cause the removal of any dwelling house or other substantial, permanent, and valuable building."

The plaintiff-appellant is the owner of a tract of land in Mahaska County. Upon this real estate, contiguous to his dwelling house, is an orchard, consisting of apple, plum, and cherry trees. Between this orchard and that residence are certain ornamental grounds. Both the orchard and ornamental grounds have existed continuously for many years previous to the commencement of the present action. Immediately before the 11th day of September, 1928, appellees, the state highway commissioners and the chief state highway engineer, took steps to establish a primary road over appellant's real estate, following such a course as to go through and destroy the orchard and ornamental grounds aforesaid. That was done without appellant's consent, and contrary to his desires and wishes. Therefore, this proceeding was instituted by appellant in the district court, for the purpose of enjoining those state officials from destroying or in any way appropriating any part of the orchard and ornamental grounds, in violation of the statutory enactment above quoted.

Special appearance was made by appellees, denying the jurisdiction of the court: First, because said highway commissioners and engineer are an arm of the state, and consequently cannot be enjoined from performing official duties; second, because the prohibition contained in Section 4566, supra, does not apply to a road established by these officers, who are acting under more recent legislation, which gives rise to condemnation of private property for public improvement; and third, because the action should have been by certiorari, rather than injunction.

Such defense was sustained by the trial court, and the in-

58

junction denied.    Confiscation of the orchard and ornamental grounds, however, was abated, pending this appeal, by an order from a justice of this court.    Consideration will now be given to the jurisdictional questions in the order named.

I.    Manifestly, the state highway commission, for certain purposes, is an arm of the state, and cannot be interfered with by suit or other legal proceedings, when performing its official duties for the sovereignty, without fraud, illegality, or in derogation of statutory authority. *Long v. State Highway Com.*, 204 Iowa 376; *Hollingshead Co. v. Board of Control*, 196 Iowa 841; *State v. Cameron*, 177 Iowa 262; *Hern v. Iowa State Agricultural Soc.*, 91 Iowa 97; *Mills Publishing Co. v. Larrabee*, 78 Iowa 97; *Wilson v. Louisiana Purchase Exp. Com.*, 133 Iowa 586.

II.    Upon that basis, appellees seek to avoid jurisdiction in this proceeding.    Is it possible for them to thus apply the principle?    A solution of the problem will be aided by stating the historical origin of the rule, and determining its range or scope.

Our English ancestors developed the theory of sovereign immunity, and they transmitted the doctrine down through the centuries to us.    Here the principle, when applied, must be invoked according to the state and Federal Constitutions adopted by the respective peoples in the United States, and the several states thereof, as a substitution for an absolute sovereignty and divine right of the king.    Article I, Section I, of the state Constitution provides:

"All men are, by nature, free and equal, and have certain inalienable rights—among which are those of enjoying and defending life and liberty, acquiring, possessing and protecting property, and pursuing and obtaining safety and happiness."

Appearing, as it does, at the very threshold of the Iowa Bill of Rights, that constitutional safeguard is thereby emphasized, and shown to be paramount.    Furthermore, Section 9 of the same article declares:

"* * * but no person shall be deprived of life, liberty, or property, without due process of law."

Can there be no remedy, then, in the courts of law or equity

for the violation of a private right or the threatened misappro-priation of property on the part of state officials who are acting illegally and without authority? No sovereign will knowingly ask its agents to do wrong, and here the state has not commissioned its highway board to destroy or confiscate appellant's orchard or ornamental grounds. In fact, it has forbidden them so to do, through the prohibition contained in Section 4566, supra.

Regardless of all this, however, and notwithstanding the constitutional protections above set forth, must a citizen whose rights are thus invaded and whose property is thus jeopardized stand helplessly by, as appellees suggest, without permission to make effective those guaranties, just because, perchance, one who happens, within legitimate bounds, to be an arm of the state, disregards those limits and seeks to do that which the state does not want him to, and has not said he could do? Nevertheless, appellees claim that the state cannot be sued, and therefore its commissioners and engineer, being its governmental arm, are also exempt therefrom, even though they seek to do that which there is a statutory mandate not to do. With reference to this, the following apt language appears in *United States v. Lee,* 106 U. S. 196:

"Looking at the question upon principle, and apart from the authority of adjudged cases, we think it still clearer that this branch of the defense cannot be maintained. It seems to be opposed to all the principles upon which the rights of the citizen, when brought in collision with the acts of the government, must be determined. * * * The defense stands here solely upon the absolute immunity from judicial inquiry of everyone who *asserts* authority from the executive branch of the government, however clear it may be made that the executive possessed no such power. Not only no such power is given, but it is absolutely prohibited, both to the executive and legislative, to deprive anyone of life, liberty, or property without due process of law, or to take private property without just compensation. These provisions for the security of the rights of the citizen stand in the Constitution in the same connection and upon the same ground as they regard his liberty and his property. It cannot be denied that both were intended to be enforced by the judiciary as one of the depart-

ments of the government established by that Constitution. * * * No man in this country is so high that he is above the law. No officer of the law may set that law at defiance with impunity. All the officers of the government, from the highest to the lowest, are creatures of the law, and are bound to obey it. It is the only supreme power in our system of government, and every man who, by accepting office, participates in its functions is only the more strongly bound to submit to that supremacy, and to observe the limitations which it imposes upon the exercise of the authority which it gives. Courts of justice are established, not only to decide upon the controverted rights of the citizens, as against each other, but also upon rights in controversy between them and the government, and the docket of this court is crowded with controversies of the latter class.''

So, where the individuals composing a commission or board or other arm of the state violate the clear provisions of the state Constitution or statute, and attempt to appropriate private property for public use without authority, the rights of the owner may be protected by the courts through the agency of an injunction or some other suitable means. *Tindal v. Wesley*, 167 U. S. 204 (42 L. Ed. 137) ; *United States v. Lee*, supra; *Pennoyer. v. McConnaughy*, 140 U. S. 1 (35 L. Ed. 363) ; *Board of Liquidation v. McComb*, 92 U. S. 531 (23 L. Ed. 623) ; *Kilbourn v. Thompson*, 103 U. S. 168 (26 L. Ed. 377) ; *Ex Parte Young*, 209 U. S. 123 (52 L. Ed. 714) ; *Looney v. Crane Co.*, 245 U. S. 178 (62 L. Ed. 230) ; *Old Colony Tr. Co. v. City of Seattle*, 271 U. S. 426 (70 L. Ed. 1019) ; *Cunningham v. Macon & B. R. Co.*, 109 U. S. 446 (27 L. Ed. 992) ; *Louisville & N. R. Co. v. Burr*, 63 Fla. 491 (58 So. 543, 44 L. R. A. [N. S.] 189, and note) ; *Salem Mills Co. v. Lord*, 42 Ore. 82 (69 Pac. 1033) ; *Ryan v. Brown*, 18 Mich. 196 (100 Am. Dec. 154) ; *Weyler v. Gibson*, 110 Md. 636 (73 Atl. 261) ; *Downs v. Lazzelle*, 102 W. Va. 663 (136 S. E. 195) ; *White Eagle Oil & Ref. Co. v. Gunderson*, 48 S. D. 608 (205 N. W. 614) ; *Apalachicola L. & D. Co. v. McRae*, 86 Fla. 393 (98 So. 505) ; *Fahey v. Hackmann*, 291 Mo. 351 (237 S. W. 752) ; *Commonwealth v. Wilson*, 141 Va. 116 (126 S. E. 220) ; *Burke v. Snively*, 208 Ill. 328; *Bonnett v. Vallier*, 136 Wis. 193 (116 N. W. 885) ; 32 Corpus Juris 247, 248, Section 389.

By implication, at least, this truth is recognized in *Long v.*

*State Highway Com.*, supra, for the conclusion there that an arm of the state could not be sued was reached because:

"There is no allegation of fraud, illegality, misconduct, breach of duty, or other wrongful act on the part of appellees."

Appellant does not attempt to obtain money from the state, or interfere with its sovereignty or the administration of its affairs through proper agencies. On the other hand, he only wants to protect his property from destruction by the agents of the state who exceed their authority and thereby seek to take it from him, not with, but without, legal right, and in opposition to a legislative guaranty. Clearly, the power of the courts to restrain state officials from violating plain provisions of the statute and Constitution is in no way derogatory to the general and well recognized rule that the state cannot be sued without its consent.

Suit here, as above explained, is not against the state, or an arm thereof, acting for the sovereign. There is in this instance an illustration of the clear distinction between an attempt to control the action or discretion of the state or its officers, board, or commission in regard to matters intrusted to them, on the one hand, and on the other, appellant's humble effort to prevent appellees from violating his constitutional, statutory, and property rights. A strange doctrine, indeed, would give rise to the court's insufficiency to help him at this juncture. Law and order demand that state officials cannot take over and possess appellant's property for road purposes, in the face of the statutory prevention contained in Section 4566, supra. Logically, then, when threatening to do so, they cannot successfully defend in an equitable proceeding to restrain such illegal act, on the basis that the courts are without jurisdiction to interfere, because, perchance, within certain appropriate limits, those who are acting wrongfully are an arm of the state. Without this judicial redress, appellant would be helpless, and the apparent security of the Constitution and statutes becomes, so far as he and his property rights are concerned, a mere pretense, without practical meaning or effect.

Consequently, the action of the state highway commission and engineer, under the facts and circumstances presented here, in attempting to build the primary road through appellant's

orchard and ornamental grounds, was illegal and without authority. Hence, they were not privileged, in that event, to the immunity from judicial process which otherwise would have been granted them.

III. However that may be, appellees urge that in no event is the state highway commission prohibited from constructing the thoroughfare in question over, through, or across the orchard or ornamental grounds aforesaid. Their  argument here is predicated upon the thought that Section 4566, supra, no longer applies to the change of a public way by the highway commissioners, although it does relate to such construction by the board of supervisors, because, they assert, Sections 4755-b27 and 7803 of the 1927 Code overcome and supersede Section 4566, supra, so far as the state highway commission is concerned. Section 4755-b27 contains the following:

"In the improvement of roads hereunder, including extensions of primary roads within cities and towns as provided in the preceding section, the state highway commission shall have the authority to purchase or to institute and maintain proceedings for the condemnation of the necessary right of way therefor. All the provisions of the law relating to the condemnation of lands for public state purposes, shall apply to the provisions hereof in so far as applicable."

Also, Section 7803, supra, embodies this phraseology:

"Proceedings may be instituted and maintained by the state of Iowa, or for the use and benefit thereof, for the condemnation of such private property as may be necessary for any public improvement which the general assembly has authorized to be undertaken by the state, and for which an available appropriation has been made. The executive council shall institute and maintain such proceedings in case authority to so do be not otherwise delegated."

Appellees interpret the last sentence of 7803, supra, to mean that the executive council shall not institute the proceedings in the case at bar, because the legislature, through Section 4755-b27, supra, has delegated that function to the state highway commission, through the words:

"All the provisions of the law relating to the condemnation of lands for public state purposes shall apply to the provisions hereof in so far as applicable."

It is assumed, without deciding, that such is the fact. Yet that does not mean that the state highway commission, through the alleged authority in that way obtained, can condemn or in any other way appropriate an orchard and ornamental ground safeguarded by Section 4566, supra.

Importance must be given to the last words of Section 4755-b27, supra, which are to this effect: "* * * shall apply to the provisions hereof in so far as applicable." What limitations, then, are contained within the words "in so far as applicable?" The subject-matter to which reference is there made relates to the improvement of highways thereunder, including certain extensions of primary roads. Primarily, then, the phrase "in so far as applicable" had to do with the improvement of roads. Jurisdiction of the highway commission in that regard was defined in *Jenkins v. State Highway Com.*, 205 Iowa 523, where it is said:

"We deem it clear that the power of the [board of county] supervisors to *establish* roads by the procedure specified in Section 4560 [1927 Code] and its following sections has not been supplanted. Nor has authority been conferred by any legislation upon any other body to *establish* a highway by the procedure specified in Section 4560 *et seq.* * * * The only statutory provision for a change in primary roads is to be found in Sections 4607 and 4621 [of the 1927 Code]. * * * The power defined therein still rests upon the board [of county supervisors], as respects the construction and maintenance of *secondary* roads. It has been transferred to the commission [state highway commission], as respects the construction and maintenance of *primary* roads."

*Junkin v. Knapp*, 205 Iowa 184, holds that Section 4566, supra, applies to Section 4607, supra, and that the board of supervisors could not appropriate an orchard when changing the course of any road to avoid bridging, grades, railroad crossings, etc. As said in the *Jenkins* case, the highway commission obtains its power from Section 4607 to make the limited changes therein authorized.

Applicable at this point is another quotation from the *Jenkins* case, supra, to this effect:

"In the light of the foregoing, we reach the conclusion that the power defined in Section 4607, as applied to primary roads, now rests upon the state highway commission, notwithstanding that the power of *establishment* is still reserved to the board of supervisors, under Section 4560."

That is to say, the board of county supervisors can establish a road, while the state highway commission can make certain changes in it after it becomes a primary road. While doing this, the last-named commission can maintain proceedings for condemnation of the necessary right of way, according to the provisions of Section 4755-b27, supra, if the "provisions" relating to the condemnation of lands for public state purposes are "applicable." These provisions are not applicable to Section 4607, supra. This was determined, as before said, by *Jenkins v. State Highway Com.*, supra. Said Section 4607, supra, is the very basis of the state board of highway commissioners' authority in the premises. Resultantly, the general condemnation statutes relating to land for public state purposes are not applicable when Section 4566, supra, is involved, because that enactment prohibits the appropriation of an orchard or ornamental grounds for road purposes. Thus it is plain that the state highway commission cannot construct a road through an orchard or ornamental ground without the owner's consent.

IV. Argument is advanced by appellees to sustain the judgment of the district court on the theory that certiorari is the only permission given by the state to correct the excessive jurisdiction exercised by its officers and agents. Wherefore, they insist that an injunction proceeding instituted here will not lie.

In view of the conclusion previously reached in reference to the right of appellant to bring some effective proceedings in the case at bar, it is not necessary to further discuss this particular phase of appellees' contention, because such permission on the part of the state is not required.

V. Moreover, in addition to this, the theory is proposed by appellees that, on the basis of the ordinary distinction between

the remedies involved, certiorari, rather than injunction, is proper, and because thereof there is no jurisdiction.

We are inclined to disagree with this idea. It is possible that certiorari might lie, but that question is not presented here, and therefore not decided. However, under our statute, an error in proceedings is not jurisdictional, but may be corrected on motion. Section 10944 of the 1927 Code contains this:

"An error of the plaintiff as to the kind of proceedings adopted shall not cause the abatement or dismissal of the action, but merely a change into the proper proceedings, and a transfer to the proper docket."

*Wilson v. Mid-West State Bank,* 193 Iowa 311, aptly suggests: "The objection that plaintiff, suing for injunctive relief, has ample remedy at law is not jurisdictional." Many decisions, however, are to be found in the books, declaring an injunction to be the proper relief where boards and courts have sought to act without jurisdiction. *McConkie v. Landt,* 126 Iowa 317; *Worrall v. Chase & Co.,* 144 Iowa 665; *Bolton v. McShane,* 67 Iowa 207; *Morgan v. Miller,* 59 Iowa 481; *Chicago & N. W. R. Co. v. Sedgwick,* 203 Iowa 726.

Whereupon, the judgment and decree of the district court should be, and hereby is, reversed.—*Reversed.*

All the justices concur.